IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06-CR-271 |
| | ) | |
| THADDEUS THEOPALIS CRUMITIE, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Thaddeus Crumitie, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence to time served. Mr. Crumitie is serving a substantial sentence for a violent crime and had a lengthy and violent criminal history at the time of the instant offense. Even considering his history, evidence of rehabilitation, and the changes in law raised in his briefing, the § 3553(a) factors do not support immediate release. Mr. Crumitie's motion seeking a sentence reduction to time served is denied and his motion will otherwise be denied without prejudice.

### I.   Procedural History

Mr. Crumitie is serving a 288-month sentence for a Hobbs Act robbery and a firearm offense in connection with the robbery. Doc. 12. He filed the pending motion for compassionate release in January 2022, arguing primarily that the changes in law for a career offender determination constitute extraordinary and compelling circumstances

supporting a reduction in his sentence. Doc. 52, *as supplemented* Doc. 57. The Court appointed counsel and ordered development of the record. Docs. 53, 55.

## II. Crimes of Conviction and Sentencing

In March 2006, Mr. Crumitie robbed a motel in Kannapolis. Doc. 41 at ¶ 3.[1] During the robbery, Mr. Crumitie threatened the night clerk and brandished a firearm. *Id.* He was arrested on the scene after the robbery, *id.* at ¶¶ 4–9, and was indicted in July 2006. Doc. 1. He was charged with one count of Hobbs Act robbery under 18 U.S.C. § 1951, one count of brandishing a firearm in connection with a crime of violence under 18 U.S.C. § 924(c), and one count of felon in possession of a firearm. *Id.*

In October 2006, Mr. Crumitie pled guilty to the robbery count and the brandishing count. Doc. 10 at ¶¶ 1–2; Minute Entry 10/30/2006. The government agreed to dismissal of the felon-in-possession of a firearm count. Doc. 10 at ¶ 5.

At sentencing, Mr. Crumitie's base offense level was 20 on Count One, interference with commerce by robbery. Doc. 41 at ¶ 14. Because of his previous convictions for felony strong arm robbery, felony possession with intent to sell and deliver cocaine, and felony common law robbery, and because the underlying robbery was a felony crime of violence, Mr. Crumitie qualified as a career offender under U.S.S.G. § 4B1.1 and received the career offender enhancement of 12 levels. Doc. 41 at ¶ 20. After acceptance of responsibility, Mr. Crumitie's total offense level was 29. *Id.* at

---

[1] The Court adopted the presentence report without change. Doc. 42.

¶¶ 21–22. With 22 criminal history points, Mr. Crumitie qualified as Criminal History Category VI, even without the career offender enhancement. *Id.* at ¶ 55.

With a total offense level of 29 for the robbery and a category VI criminal history, the usual advisory Guideline range was 151 to 188 months, and the guideline suggestion for the brandishing count added the statutory mandatory minimum consecutive term of 84 months, for a total guideline range of 235 to 272 months. *Id.* at ¶ 89. But U.S.S.G. § 4B1.1, the guideline for career offenders, requires a higher guideline range when one crime of conviction is a § 924(c) offense, as was the case for Mr. Crumitie. Using the table in § 4B1.1(c)(3), with credit for acceptance of responsibility, Mr. Crumitie's guideline range was increased to 262 to 327 months. *Id.* at ¶ 89; Doc. 42; *see generally United States v. Wharton*, No. 03-CR-70164, 2020 WL 1950455, at *5 (W.D. Va. Apr. 22, 2020) (explaining how guideline calculations work when a defendant is a career offender convicted of a brandishing crime and another crime), *appeal dismissed,* No. 20-6611, 2021 WL 5352895 (4th Cir. July 8, 2021).

The Court imposed a middle-of-the-guidelines total sentence of 288 months. Doc. 12; Doc. 42. Specifically, Mr. Crumitie was sentenced to 204 months on the Hobbs Act robbery and 84 months for brandishing a firearm, to run consecutively. Doc. 12 at 2.

### III. Other Relevant Facts

Mr. Crumitie committed the underlying robbery when he was 30 years old. Doc. 41 at 2. Before the robbery, his criminal history was continuous and extensive. He committed his first felony at age 14 for strong arm robbery; after pleading no contest, he received a 42-month suspended sentence and three years of probation. *Id.* at ¶ 24. Mr.

3

Crumitie's probation was revoked two years later for probation violations, and he was re-sentenced to a nine-year suspended sentence and five years of probation. *Id.* Mr. Crumitie then committed a series of misdemeanors, *id.* at ¶¶ 25–26, which led to revocation of his probation, and he received an active sentence of seven years imprisonment. *Id.* at ¶ 24. Mr. Crumitie was paroled less than one year later, *id.* at ¶ 27, and within two months he committed more crimes, including felony robbery, felony retaliation against a witness, and battery. *Id.* His parole was revoked, and he returned to prison until the expiration of his sentence in March 1999. *Id.* at ¶ 24.

Three months after his release from prison, Mr. Crumitie returned to criminal activity and regularly committed criminal offenses from age 23 to age 27. *Id.* at ¶¶ 30–48. The crimes ranged from misdemeanor battery, *id.* at ¶ 30, and felony battery, *id.* at ¶ 31, to felony possession with intent to sell and deliver cocaine. *Id.* at ¶ 42.

Mr. Crumitie first consumed alcohol at age 13 and smoked marijuana daily beginning at age 14. *Id.* at ¶ 80. He was a regular user of hard drugs and never sought treatment for substance abuse. *Id.* at ¶¶ 81–82. He dropped out of high school in the ninth grade, *id.* at ¶ 83, but later obtained his GED. *Id.*; Doc 56 at 4.

Mr. Crumitie is now 46 years old. Doc. 41 at 2. He is presently scheduled for release in October 2027. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May. 31, 2022). He has paid only $13 towards the $200 special assessment. Doc. 56 at 4.

While in prison, Mr. Crumitie has completed 605 hours of educational courses. *Id.* He was accepted into a psychiatric treatment program but declined participation, and

4

he expressed "no interest" in participating in drug abuse programming. *Id.* Mr. Crumitie has had 17 disciplinary infractions while incarcerated, the latest occurring in 2017 for refusing to obey an order, failing to stand for count, possessing a non-hazardous tool, and possessing drugs/alcohol. *Id.* at 1–3. Mr. Crumitie has had no infractions since 2017.

If released, Mr. Crumitie planned to live with his friend in Charlotte, North Carolina. *Id.* at 4. However, the probation office conducted a home assessment and did not believe the proposed release plan was suitable. *Id.* at 5. Mr. Crumitie is aware of the probation office's assessment of his plans, and he is seeking an alternative placement to propose to the Court. Doc. 57 at 9. No placement has yet been proposed, and the Court is unaware of any job prospects or means of support for Mr. Crumitie once released.

### IV. The Pending Motion

Mr. Crumitie contends that if he were sentenced today, he would not be a career offender and his guideline range would be substantially lower. *Id.* at 2. The government acknowledges that this is so. Doc. 59 at 7.

The career offender enhancements in the guidelines apply only to certain crimes of conviction, including "felony crimes of violence." *See* U.S.S.G. § 4B1.1(a) (noting the career offender enhancement applies if the felony offense of conviction is either a crime of violence or a controlled substance offense). At the time Mr. Crumitie was sentenced, no one questioned that Hobbs Act robbery was a crime of violence under the guidelines then in effect. *See, e.g.*, *Barksdale v. United States*, No. 05-CV-245, 2006 WL 1117813, at *4 (E.D. Va. Apr. 26, 2006) (noting that robbery was a crime of violence under the then-applicable version of U.S.S.G. § 4B1.2(a)(1)).

5

But in 2016, the Guideline definition of a "crime of violence" was amended. *See generally United States v. Gattis*, 877 F.3d 150, 154 (4th Cir. 2017). The Fourth Circuit recently held that Hobbs Act robbery does not constitute a crime of violence under the current version of U.S.S.G. § 4B1.1(b). *See United States v. Green*, 996 F.3d 176, 178 (4th Cir. 2021). This change in the guidelines was not retroactive. *See, e.g.*, *Dixon v. Streeval*, No. 19-CV-867, 2020 WL 5910452, at *3 (W.D. Va. Oct. 6, 2020).

As the parties agree, without the career offender enhancement, Mr. Crumitie's offense level would be 17, calculated by his base level of 20 and the three-level reduction for acceptance of responsibility. Doc. 41 at ¶¶ 19, 21; Doc. 57 at 6; Doc. 59 at 8. With an offense level of 17 and a category VI criminal history, Mr. Crumitie's guideline range would have been 51 to 63 months for the Hobbs Act robbery and 84 consecutive months for the § 924(c) conviction, for a total guideline range of 135 to 147 months—as opposed to the 262 to 327 months as calculated in 2006. Doc. 57 at 6; Doc. 41 at ¶ 89

Mr. Crumitie relates his situation to that in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), where the Fourth Circuit affirmed a district court's decision to reduce sentences based on changes in law related to mandatory consecutive § 924(c) sentences. *McCoy*, 981 F.3d at 274–75. The Fourth Circuit held that even though those statutory changes were not retroactive, they could be considered as part of the evaluation in determining whether a sentence reduction under the compassionate release provision was appropriate. *Id.* at 286. Mr. Crumitie asserts that, while *McCoy* dealt specifically with the non-retroactive change in sentence "stacking" imposed under multiple convictions for violations of § 924(c), the holding in *McCoy* is much broader and allows courts to

6

consider "changes in sentencing law in general, to be determined on a case-by case basis." Doc. 57 at 4.

The Government acknowledges that several courts have relied on *McCoy* to grant relief under § 3582(c)(1)(A) when the change in career offender status creates a "significant disparity." *See* Doc. 59 at 7. Without conceding the point, the Government contends that a change in career offender status is not enough, standing alone, to merit relief, *id.*, and that the § 3553(a) factors do not support a sentence reduction. *Id.* at 9–10.

## V. Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (cleaned up). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Mr. Crumitie requested a reduction in sentence from the warden of FCI Bennettsville, Doc. 57-1, which was denied in October 2021. Doc. 57-2. The government agrees that Mr. Crumitie has satisfied the exhaustion requirement. Doc. 59 at 5 n.1.

7

The statute also requires that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the § 3553(a) sentencing factors merit a reduction. *See McCoy*, 981 F.3d at 275.[2] The facts relevant to these requirements overlap a fair bit, *see United States v. Newell*, No. 13-CR-165-1, 2021 WL 3269650, at *6 n.28 (M.D.N.C. July 30, 2021), and "[d]ecisions about whether a particular defendant's sentencing factors support release are made in light of his specific extraordinary and compelling reasons, not separate from those reasons." *United States v. Beck*, No. 13-CR-186-5, 2021 WL 260402, at *4 (M.D.N.C. Jan. 26, 2021).

On a "case-by-case basis," changes in sentencing law, combined with other factors, can be extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). *See McCoy*, 981 F.3d at 285–86; *United States v. Curry*, No. 05-CR-282-1, 2021 WL 2644298, at *4 (M.D.N.C. June 25, 2021). The individualized assessment can include consideration of, for example, a defendant's age at the time of the crimes, rehabilitation, length of sentence served, and institutional record. *See McCoy*, 981 F.3d at 285–86; *Curry*, 2021 WL 2644298, at *4–6.

If Mr. Crumitie were sentenced today for only the two crimes to which he pled guilty, he would not be considered a career offender. A within-guidelines sentence would be substantially shorter.

---

[2] The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. The Court considers the old policy statement applicable to motions brought by BoP as helpful but non-binding guidance. *See McCoy*, 981 F.3d at 282 n.7.

But that is only one possible hypothetical result. Even if the government offered that same plea agreement, the Court might not have imposed a middle-of-the-range sentence. While Hobbs Act robbery may no longer be a crime of violence for purposes of the enhancement in U.S.S.G. § 4B1.1, the crime Mr. Crumitie committed was, in fact, violent—he brandished a firearm, pointed the firearm at the victim, and threatened the victim. Doc. 41 at ¶ 3. He has a long criminal history of assaults and robberies, and he remains in Criminal History level VI even without career offender status; with 22 points, he well exceeded the minimum of 13 required for this category. Even though the felon-in-possession count was dismissed, there is no question he was guilty of that crime. Even though Mr. Crumitie's attorney asked for a low-end sentence, Doc. 60 at 4, the sentencing judge imposed a sentence several years longer than the bottom of the range, indicating that the sentencing judge did not think a shorter sentence was sufficient.[3]

At least as importantly, Mr. Crumitie's record of rehabilitation is not all positive and he does not have a good release plan in place. Although he has completed 605 hours of educational courses since his incarceration in 2006, Doc. 56 at 4, Mr. Crumitie has had seventeen disciplinary infractions. *Id.* at 1–3. He has also declined participation in beneficial treatment programs, *id.* at 4, and the probation office has substantial concerns about his proposed residence. *Id.* at 4–5.

---

[3] While the sentencing judge did not explain his reasons for not imposing a sentence at the low end of the range, Doc. 60 at 7–9, the prosecutor identified many relevant factors associated with the nature and circumstances of the offense and Mr. Crumitie's criminal history that suggested a middle-of-the-range sentence was more appropriate. *Id.* at 5–6.

9

The Court is not satisfied that extraordinary and compelling reasons exist for a sentence reduction to time served or that the § 3553(a) factors support immediate release. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). Although Mr. Crumitie has served more time than the maximum guideline range without the career offender enhancement, that change in the guidelines was not retroactive. Reducing his sentence to time served would not account for his criminal history, the nature and circumstances of the crime, or his disciplinary record while incarcerated. Nor would it reflect the seriousness of his offenses, provide just punishment, or deter similar conduct.

## VI. Conclusion

The compassionate release statute is appropriately invoked only in unusual cases or, as the Fourth Circuit put in in *McCoy*, the "most grievous cases." 981 F.3d at 286. It should not become a vehicle for wholesale and repeated reconsideration of sentences in violation of the general rule of finality. *See Goodwyn*, 596 F.3d at 235. Mr. Crumitie has a violent criminal history and committed a crime for which he is serving a substantial but just sentence. Because the § 3553(a) factors do not support immediate release, his motion for a sentence reduction to time served will be denied.

It is **ORDERED** that the defendant's motion for compassionate release, Docs. 52, *as supplemented* Doc. 57, is **DENIED**.

This the 2nd day of June, 2022.

  _____
  UNITED STATES DISTRICT JUDGE